EASTERN AIRLINES, INC., Appellant,

v.

LEXINGTON–FAYETTE URBAN COUNTY AIRPORT BOARD, Appellee.

Court of Appeals of Kentucky.

Aug. 10, 1984.

Discretionary Review Denied by Supreme Court Dec. 14, 1984.

Charles E. Shivel, Jr., David C. Schwetschenau, Stoll, Keenon & Park, Lexington, for appellant.

Sandra Mendez Dawahare, Shouse & Burrus, Lexington, for appellee.

Before HAYES, C.J., HOWARD and HOWERTON, JJ.

HOWERTON, Judge.

Eastern Airlines seeks a reversal of a summary judgment requiring it to pay the airport board continuing rentals. Eastern argues that the termination of its obligation to carry mail to and from Lexington allowed it to terminate the lease agreement with the airport board. We agree and reverse the judgment of the Fayette Circuit Court. Eastern presents three other allegations of error which we will consider in our discussion of its primary argument.

The parties entered into a lease agreement in 1963 whereby Eastern obtained the right to use the airport and its facilities in exchange for payment of rent and fees. The lease was amended in 1973 and provided for a 20-year term commencing in 1976 when Eastern began occupying a new terminal building. In 1979, the board attempted to negotiate rents and fees with all certified carriers serving the airport. Eastern did not sign a new agreement, but it did begin making the new rental payments which had been agreed to by the other carriers. It continued to make such payments until it ceased serving Lexington on May 31, 1980.

In February 1980, Eastern filed a notice with the Civil Aeronautics Board (C.A.B.) and others of its intention to suspend air service at Lexington on June 2, 1980. On April 30, 1980, Eastern sent a written notice to the airport manager of its intention to suspend service. The C.A.B. notified Eastern on May 29, 1980, that it would not prohibit it from suspending all service at the airport effective June 1, 1980.

The airport board filed this suit alleging that Eastern had breached its lease agreement by failing to pay rent after June 1980. There are no factual disputes, and both sides filed motions for summary judgment. The trial court entered judgment in favor of the airport board and held that the cancellation provisions in the lease became operable only if the conditions were imposed by some independent intervention rather than by a voluntary termination initiated by Eastern Airlines. The court also cited the doctrine of impossibility of performance and held that any impossibility was caused by the action of Eastern Airlines.

Article XI of the lease agreement provides for cancellation by the lessee (Eastern Airlines) by giving 30 days' written notice to the airport board together with the happening of certain events. The applicable event is provided for as follows:

(A) The termination of lessee's obligations or right (imposed by contract or

otherwise) to the Federal Government for the carriage of United States air mail to, from or through Bluegrass Field, Lexington, Kentucky.

The result of the C.A.B. order "not prohibiting" Eastern from abandoning its service to Lexington and Eastern's cessation of service relieved it of its obligation to carry the mail. An airline is obligated to transport mail on flights listed in schedules filed with the C.A.B. and the postmaster general. 49 U.S.C. § 1375(b) (1958). However, when a carrier terminates such service, it no longer files a schedule for service to that point and it is no longer obligated to transport the mail in that area.

 We find nothing in the lease which requires that the termination result from some independent action by a federal agency, and it is not for the court to remake a contract by adding additional terms which have not been written into it. *O.P. Link Handle Co. v. Wright*, Ky., 429 S.W.2d 842 (1968). We read the contract as providing that the termination by the lessee may be from causes initiated by an outside party or by the lessee. The first clause of Article XI(A) reads, "[t]he termination of lessee's obligations or right ...." Action by an outside party could terminate Eastern's "right" to carry the mail, and action initiated by Eastern could terminate its "obligation" to carry the mail. If we accepted the airport board's theory, there would be no need for any language other than a termination of the lessee's "right."

The law in existence at the time the agreement was made allowed a carrier to unilaterally terminate service with approval by the C.A.B. 49 U.S.C. § 1371(j) (1934). According to the law, as amended in 1978, the carrier may terminate or modify service after filing notice with the C.A.B. and the local authorities and receiving notice that the C.A.B. will not prohibit abandonment. The procedures may be slightly different, but the right to terminate service has always been available to the carrier. Under both procedures, the notice of intent to abandon is analyzed by the C.A.B.

The doctrine of impossibility of performance is inapplicable in this situation. Even if the defense is not available to one who renders himself incapable of performing, Eastern does not need the defense of impossibility of performance to entitle it to judgment. The lease allowed the lessee to cancel the agreement if it was no longer obligated to carry the mail. The agreement placed no restriction on who initiated the termination of service at the airport, which automatically relieved the carrier from carrying the mail. Lease provisions which allow one party to terminate an agreement upon the occurrence of a stated condition are valid, even if the occurrence of the condition is solely within the control of the party with the option. *David Roth's Sons, Inc. v. Wright & Taylor, Inc.*, Ky., 343 S.W.2d 389 (1961).

The judgment of the Fayette Circuit Court is reversed, and this case is remanded for entry of judgment in favor of Eastern Airlines.

All concur.